**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD J. BURKE, JR.,
an individual;

Plaintiff

v.

CITY OF DETROIT, a Michigan municipal corporation, d/b/a DETROIT WATER AND SEWERAGE DEPARTMENT,

Defendant.

Case No. 26- ___________-
Hon.

---

## COMPLAINT

NOW COMES Plaintiff, Richard J. Burke, Jr., by and through his attorneys, Hubbard Snitchler & Parzianello PLC, and for his Complaint, state on this honorable Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Richard J. Burke, Jr. is an individual residing in the State of Michigan.

2. Burke was born on January 14, 1959, and was 66 years old at the time Defendant terminated his employment on November 24, 2025.

3. Defendant City of Detroit ("City") is a Michigan municipal corporation that owns and operates the Detroit Water and Sewerage Department ("DWSD").

4. At all relevant times, Burke was employed by the City through DWSD.

5. This action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

6. This Court has subject-matter jurisdiction over Plaintiff's claims arising under the ADEA pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(c)(1). This Court has supplemental jurisdiction over Plaintiff's related claims arising under ELCRA pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same common nucleus of operative facts as Plaintiff's federal claims.

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2026-05423. On August 13, 2026, the EEOC issued a Determination and Notice of Rights dismissing Plaintiff's charge and notifying him of his right to commence a civil action. Plaintiff has satisfied the applicable administrative prerequisites to commencing this action under the ADEA, 29 U.S.C. § 626(d).

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

Burke’s Employment and Established Performance Record

9. Burke began working for DWSD in approximately February 2018 as an information-technology project manager.

10. Burke brought decades of information-technology and project-management experience to DWSD.

11. Throughout the substantial majority of his employment, DWSD consistently evaluated Burke as meeting or exceeding its expectations.

12. Burke's written performance evaluations repeatedly rated him “Exceeded Expectations” in core competencies including professionalism, customer service, initiative, dependability, and integrity.

13. For example, Burke's 2019 annual evaluation rated his overall performance “Exceeded Expectations,” documented his successful completion of significant IT projects, and described him as a steady employee who performed his work and assisted others.

14. Burke's subsequent evaluations continued to document satisfactory or better performance.

15. Burke's 2022 review rated him “Exceeded Expectations” across DWSD's core behavioral competencies, including professionalism, initiative, dependability, customer service, and integrity.

16. Burke's 2023 evaluation rated his overall behavioral competencies "Exceeded Expectations" and described him as dependable and possessing significant integrity.

17. Burke continued receiving satisfactory performance evaluations through 2024.

18. Consistent with Burke's established performance history, in November 2024, DWSD promoted Burke from Project Manager II to Project Manager III.

Change in Leadership and Treatment of Senior Employees

19. During Burke's later years at DWSD, Anil Gosine ("Gosine") exercised increasing authority over DWSD's Information Technology operations and over Burke's work.

20. Burke's working conditions materially deteriorated as Gosine became increasingly involved in the management of Burke and other senior employees.

21. Gosine repeatedly criticized and confronted Burke in group settings, questioned Burke's work in front of colleagues, and engaged in conduct Burke considered demeaning and unprofessional.

22. Beginning in approximately June 2024, Gosine also repeatedly referred to Burke as "Richie Rich," despite Burke's preference to be addressed as Rick or Richard.

23. Burke considered Gosine's repeated use of that nickname demeaning and disrespectful, particularly in light of Burke's age, professional experience, and decades-long career.

24. The deterioration in Burke's treatment occurred despite his longstanding record of satisfactory or better performance.

Reclassification of Older, Senior Employees

25. In approximately February 2025, DWSD informed Burke that his position was being changed from Project Manager III to Executive Management Team – Special Projects ("EMT").

26. Burke was informed that the change was mandatory.

27. Burke was further informed that declining the change could result in the termination of his employment.

28. The reclassification adversely affected Burke's compensation opportunities, including his eligibility for future bonuses and/or compensation adjustments.

29. DWSD subjected a group of other senior employees within the IT and Engineering organizations to similar employment changes.

30. The employees subjected to these changes included multiple older, experienced, and highly compensated employees within DWSD's IT and

Engineering organizations. Burke observed that older employees were disproportionately affected by these employment changes.

31. The affected employees included multiple employees who were at least 50 years old.

32. Following these changes, DWSD began reducing and reassigning the responsibilities of affected senior employees.

33. Defendant reassigned substantial portions of Burke's established project-management duties and responsibilities to employees who were younger than Burke, while Burke remained qualified and available to perform those responsibilities.

34. Burke was not given comparable replacement project-management responsibilities.

35. By approximately March 2025, Burke was moved away from his established project-management duties and assigned to quality-assurance work associated with a vendor project.

36. The vendor project to which Burke was assigned was of limited duration.

37. Burke's reassignment therefore left him with substantially diminished responsibilities and work that Defendant knew would eventually conclude.

Abrupt Change in Burke's Performance Record

38. The reduction in Burke's responsibilities coincided with an abrupt deterioration in the manner in which his performance was evaluated.

39. Burke had never previously experienced a sustained record of materially deficient performance at DWSD.

40. Nevertheless, in 2025, Burke received the lowest performance evaluation of his career.

41. Burke's immediate supervisor, Jennifer Payne ("Payne"), indicated to Burke that Gosine had input into Burke's evaluation and had insisted upon lower scores.

42. Payne apologized to Burke regarding aspects of the evaluation.

43. The abrupt deterioration in Burke's performance ratings was inconsistent with his established performance history and occurred after Gosine became increasingly involved in Burke's supervision and after Burke's responsibilities had already been reduced.

July 2025 Confrontation and Discipline

44. On or about July 21, 2025, Burke attended a work meeting with Payne and other DWSD employees concerning quality-assurance work.

45. Gosine arrived after the meeting had begun and initiated repeated questioning of Burke concerning his work responsibilities.

46. Gosine continued questioning Burke after Burke explained his responsibilities, repeatedly interrupted responses, and escalated the interaction in front of Burke's coworkers.

47. At one point, Burke informed Gosine that further questions regarding Burke's assignments should be directed to Burke's manager.

48. Gosine responded by telling Burke that he would give Burke “one chance” to retract or “walk back” his statement.

49. Burke declined to do so.

50. Three days later, on July 24, 2025, DWSD issued Burke a written Corrective Disciplinary Action identifying the alleged offense as “Poor Work Performance.”

51. Prior to this discipline, Burke had not been subjected to a comparable progressive disciplinary history for poor performance.

52. DWSD also prepared a Performance Improvement Plan (“PIP”) that stated that it was made on July 24, 2025.

53. The PIP, however, was not signed by Burke and his supervisor until September 2025, approximately two months after the date appearing at the beginning of the document.

54. The substantial delay between the stated creation of the PIP and its execution was inconsistent with Defendant's later characterization of Burke as suffering from urgent or longstanding performance deficiencies.

55. On or about September 24, 2025, shortly after Payne returned from an extended leave, Burke was directed to review and sign the PIP on short notice.

56. Gosine publicly questioned Burke regarding the unsigned PIP and again addressed Burke using the “Richie Rich” nickname.

57. Burke thereafter signed the PIP.

Burke’s Complaint to Human Resources

58. By September 2025, Burke believed Gosine's treatment of him had become sufficiently serious that Human Resources intervention was necessary.

59. On approximately September 26, 2025, Burke contacted DWSD Human Resources to request information regarding the procedure for filing a formal complaint concerning Gosine's treatment of him.

60. Human Resources provided Burke with instructions for submitting a formal complaint.

61. In early October 2025, Burke submitted a formal complaint and supporting incident reports to DWSD.

62. Burke's complaint described repeated harassment, hostile and unprofessional workplace treatment, and conduct Burke believed was discriminatory and improper.

63. In his formal complaint and supporting incident reports, Burke identified conduct that he believed constituted discrimination based upon his age, including the treatment he experienced from Gosine and the circumstances surrounding the deterioration of his working conditions.

64. DWSD accepted Burke's complaint and initiated an investigation.

65. On or about October 27, 2025, Burke met with a representative of DWSD's legal department concerning his allegations.

66. During the investigation, Burke explained his concerns regarding Gosine's conduct and identified witnesses with knowledge of the incidents he had reported.

67. On November 4, 2025, DWSD issued Burke a written determination concerning its investigation.

68. DWSD expressly characterized the matter it had investigated as Burke's complaint of “harassment and an unprofessional and discriminatory work environment.”

69. DWSD determined that Burke's complaint was “substantiated, in part.”

70. Although DWSD stated that it could not substantiate that Gosine had targeted Burke with bullying or harassment because it concluded that Gosine's leadership and communication style was consistent among employees, DWSD expressly substantiated Burke's complaints concerning Gosine's unprofessional conduct.

Burke’s Termination

71. DWSD informed Burke that Human Resources would address those concerns.

72. Only approximately twenty days after DWSD issued its determination concerning Burke's complaint, Defendant terminated Burke's employment.

73. On November 24, 2025, Burke was called into a meeting with Human Resources and Payne.

74. At the meeting, DWSD informed Burke that his employment was being terminated because of a purported “lack of work.”

75. At the time of his termination, Burke was 66 years old.

76. The stated “lack of work” was the foreseeable consequence of Defendant's own prior decisions to strip Burke of his established project-management responsibilities, reassign his projects, and place him into work associated with a limited-duration vendor engagement.

77. Defendant had reassigned work previously performed by Burke and other senior employees to younger and/or less-senior employees.

78. At least one other project manager over the age of 60 similarly had projects reassigned to younger employees and was subsequently terminated after the remaining vendor-related work concluded.

79. Younger employees continued performing work and responsibilities that had previously been performed by Burke and other older employees.

80. Defendant's assertion that there was a “lack of work” for Burke was therefore inconsistent with its continued need for the underlying work and with its prior decisions to reassign that work to younger employees.

81. Defendant's actions were part of a sequence in which Burke was promoted in late 2024, reclassified shortly thereafter, deprived of compensation opportunities, stripped of significant responsibilities, subjected to an abrupt deterioration in his performance ratings, disciplined, placed on an irregularly implemented PIP, and ultimately terminated after the remaining work assigned to him concluded.

82. Defendant terminated Burke despite his years of satisfactory-to-excellent performance and only approximately one year after promoting him to Project Manager III.

83. Defendant's asserted reasons for its actions toward Burke were false, inconsistent, and/or insufficient to explain its treatment of Burke.

84. Defendant's asserted reasons were a pretext for unlawful discrimination based upon Burke's age.

## COUNT I – AGE DISCRIMINATION IN VIOLATION OF THE ADEA, 29 U.S.C. § 623(a)(1)

85. Plaintiff incorporates by reference all prior allegations as though fully set forth herein.

86. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 630(b), and Burke was an employee protected by the ADEA, being at least 40 years old.

87. Burke was qualified for his position and performed satisfactorily for years, including receiving a promotion in November 2024.

88. Defendant subjected Burke to adverse employment actions, including changes to his compensation opportunities and responsibilities, discipline, and termination.

89. Defendant reassigned Burke’s established work to younger employees, materially reduced his responsibilities, and subsequently relied on an asserted lack of work to terminate him.

90. Defendant's treatment of Burke, including the reassignment of his established duties to younger employees, the reduction of his responsibilities, the

abrupt deterioration in his performance evaluations, and his eventual termination for a purported lack of work, occurred under circumstances giving rise to an inference of intentional age discrimination. Burke's age was the but-for cause of Defendant's challenged adverse employment actions, including his termination.

91. Defendant's conduct constituted unlawful age discrimination in violation of 29 U.S.C. § 623(a)(1). As a direct and proximate result of Defendant's unlawful conduct, Burke suffered lost wages, lost employment benefits, and other recoverable pecuniary losses.

92. Defendant’s violation of the ADEA was willful because Defendant knew, or showed reckless disregard for whether, its conduct was prohibited by federal law.

## COUNT II – RETALIATION IN VIOLATION OF THE ADEA, 29 U.S.C. § 623(d)

93. Plaintiff incorporates by reference all prior allegations as though fully set forth herein.

94. Burke engaged in activity protected under the ADEA when he complained to Defendant's Human Resources Department regarding employment practices that he reasonably believed constituted unlawful age discrimination.

95. Defendant had knowledge of Burke's protected activity through his formal complaint to Human Resources, the supporting incident reports, and its subsequent investigation.

96. Following Burke's protected activity, Defendant terminated his employment on November 24, 2025, approximately twenty days after issuing its November 4, 2025 written determination concerning his complaint.

97. The temporal proximity between Burke's protected activity and termination, together with Defendant's prior reassignment of his responsibilities, the deterioration in his performance evaluations, and its subsequent reliance on an asserted lack of work, supports an inference that Defendant's stated justification was pretextual and that Burke would not have been terminated but for his protected activity.

98. Defendant's conduct constituted unlawful retaliation in violation of 29 U.S.C. § 623(d). As a direct and proximate result of Defendant's retaliation, Burke suffered lost wages, lost employment benefits, and other recoverable pecuniary losses.

## **COUNT III – AGE DISCRIMINATION IN VIOLATION OF ELCRA MCL 37.2202**

99. Plaintiff incorporates by reference all prior allegations as though fully set forth herein.

100. ELCRA prohibits an employer from discharging or otherwise discriminating against an individual with respect to employment, compensation, or the terms, conditions, or privileges of employment because of age.

101. At all relevant times, Burke was a member of the class protected from age discrimination under ELCRA.

102. Burke was qualified for his position and had a longstanding record of satisfactory-to-excellent performance.

103. Defendant subjected Burke to adverse employment actions, including but not limited to materially changing the terms and conditions of his employment, diminishing and reassigning his responsibilities, adversely affecting his compensation opportunities, subjecting him to discipline, and ultimately terminating his employment.

104. Burke's age was a motivating factor in Defendant's decisions to materially alter the terms and conditions of his employment, reduce and reassign his responsibilities, adversely affect his compensation opportunities, and ultimately terminate his employment.

105. Circumstances supporting an inference of age discrimination include, without limitation:

a. Defendant's reclassification of Burke and other older, senior employees;

b. the adverse effect of that reclassification upon Burke's compensation opportunities;

c. Defendant's reassignment of Burke's established duties and projects to younger employees;

d. Defendant's treatment of other older and senior employees in Gosine's organization;

e. the abrupt deterioration in Burke's performance ratings after years of satisfactory-to-excellent evaluations;

f. management's involvement in lowering Burke's performance ratings;

g. Defendant's decision to place Burke into limited-duration work after stripping him of his established responsibilities;

h. Defendant's termination of Burke for a purported "lack of work" after Defendant itself had reassigned his work to younger employees; and

i. the continued performance of Burke's former work and responsibilities by younger employees.

106. Defendant's stated reasons for its adverse employment actions, including its asserted lack of work at the time of Burke's termination, were not the true reasons for those actions, but instead constituted a pretext for unlawful discrimination based upon Burke's age.

107. As a direct and proximate result of Defendant's violations of ELCRA, Burke has suffered and continues to suffer damages, including loss of wages and

employment benefits, loss of future earning capacity, emotional distress, humiliation, embarrassment, and other economic and noneconomic damages.

108. Defendant is liable to Burke for all damages and relief permitted under ELCRA.

**COUNT IV – RETALIATION IN VIOLATION OF ELCRA MCL 37.2701**

109. Plaintiff incorporates by reference all prior allegations as though fully set forth herein.

110. ELCRA prohibits an employer from retaliating or discriminating against an individual because that individual has opposed a violation of ELCRA or made a complaint concerning conduct prohibited by ELCRA.

111. In September and October 2025, Burke complained to DWSD Human Resources regarding workplace treatment that he believed was harassing, discriminatory, and improper.

112. Burke's complaint included conduct that Burke expressly related to his age and decades of professional experience.

113. On approximately September 26, 2025, Burke contacted Human Resources seeking information regarding the procedure for filing a formal complaint, and in early October 2025 he submitted a formal complaint with supporting incident reports.

114. Defendant understood Burke's complaint to include allegations of discrimination.

115. Defendant thereafter investigated Burke's complaint and interviewed Burke concerning his allegations.

116. In its November 4, 2025 written determination, DWSD expressly characterized the matter it had investigated as Burke's complaint of "harassment and an unprofessional and discriminatory work environment."

117. DWSD determined that Burke's complaint was substantiated in part and specifically substantiated his complaints concerning unprofessional conduct.

118. Defendant therefore had actual knowledge of Burke's complaints concerning perceived discriminatory workplace treatment before deciding to terminate his employment.

119. Burke engaged in protected activity under ELCRA by opposing employment practices that he reasonably believed constituted unlawful age discrimination and by submitting a formal complaint concerning that treatment to Defendant's Human Resources Department.

120. Only approximately twenty days after DWSD issued its written determination concerning Burke's complaint, Defendant terminated Burke's employment.

121. Defendant's termination of Burke constituted a materially adverse employment action.

122. The close temporal proximity between Burke's protected activity, Defendant's investigation and written determination, and his subsequent termination supports an inference of a causal connection between Burke's protected activity and Defendant's decision to terminate his employment.

123. The inference of retaliation is further supported by the circumstances surrounding Burke's termination, including Defendant's prior reassignment of his responsibilities, the deterioration in his performance evaluations, the disciplinary and performance-management process, and Defendant's subsequent reliance on an asserted lack of work.

124. Defendant's asserted reason for terminating Burke was not the true reason for its decision, but instead constituted a pretext for unlawful retaliation.

125. Burke's protected activity was a significant factor in Defendant's decision to terminate his employment, in violation of MCL 37.2701.

126. As a direct and proximate result of Defendant's retaliation, Burke has suffered and continues to suffer damages, including loss of wages and employment benefits, loss of future earning capacity, emotional distress, humiliation, embarrassment, and other economic and noneconomic damages.

127. Defendant is liable to Burke for all damages and relief permitted under ELCRA.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Richard J. Burke, Jr. respectfully requests that this Court enter judgment in his favor and against Defendant City of Detroit and award:

A. Back pay, including lost wages, salary, bonuses, employment benefits, and other compensation, subject to the remedies available under each statute;

B. Compensatory damages for emotional distress, humiliation, embarrassment, mental anguish, and other noneconomic injuries recoverable under ELCRA;

C. Reinstatement or, if reinstatement is not appropriate, front pay and other equitable relief;

D. Prejudgment and post-judgment interest as permitted by law;

E. Reasonable attorney fees and costs as permitted by the ADEA and ELCRA;

F. Liquidated damages under 29 U.S.C. 29 U.S.C. § 626(b) upon a finding that Defendant willfully violated the ADEA; and

G. Such other relief as the Court deems just and proper.

Respectfully submitted,
**HUBBARD SNITCHLER & PARZIANELLO PLC**

*/s/ Eric A. Parzianello*
Eric A. Parzianello (P39624)
John A. Hubbard (P42797)
Attorneys for Plaintiff
801 W. Ann Arbor Trail, Suite 240
Plymouth, Michigan 48170
(313) 672.7300
eparzianello@hspplc.com
jhubbard@hspplc.com

Dated: October 28, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD J. BURKE, JR.,
an individual;

Plaintiff

v.

CITY OF DETROIT, a Michigan municipal corporation, d/b/a DETROIT WATER AND SEWERAGE DEPARTMENT,

Defendant.

Case No. 26- ___________-
Hon.

---

**PLAINTIFF'S JURY DEMAND**

Plaintiff hereby demands a trial by jury on all matters properly tried to a jury.

*/s/ Eric A. Parzianello*
Eric A. Parzianello (P39624)
John A. Hubbard (P42797)
Attorneys for Plaintiff
801 W. Ann Arbor Trail, Suite 240
Plymouth, Michigan 48170
(313) 672.7300
eparzianello@hspplc.com
jhubbard@hspplc.com

Dated: October 28, 2026